IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

IN RE: ROBERT F. ROOD, IV,      :
et al.
_____ :
KORE HOLDINGS, INC., et al.
     Appellants              :

     v.                      :   Civil Action No. DKC 09-2816

GARY A. ROSEN, TRUSTEE, et al.  :
     Appellees               
_____ :
GARY A. ROSEN, TRUSTEE, et al.
     Appellants              :

     v.                      :   Civil Action No. DKC 09-1663

KORE HOLDINGS, INC., et al.     :
     Appellees
                           :

**MEMORANDUM OPINION**

Presently pending are two separate appeals arising from an adversary proceeding in the consolidated bankruptcy cases of Robert F. Rood, IV ("Debtor"), and related business entities. Because the appeals share a common nucleus of fact, they will be consolidated for purposes of this opinion.

In case number 09-2816 ("the Kore Appeal"), Kore Holdings, Inc. ("Kore"), six wholly-owned Kore subsidiaries,[1] and Charles Timothy Jewell appeal from an order of the bankruptcy court granting a preliminary injunction in favor of Gary A. Rosen, the

_____

[1] Although six subsidiaries are named in the notice of appeal (Kore paper 1, att. 2), the briefs make no mention of one, Mortgage American Bankers (Kore papers 6, 12).

Chapter 7 Trustee, and Southern Management Corporation Retirement Trust ("SMCRT"), a creditor.[2]   Also pending in the Kore Appeal is a motion to dismiss filed by Mr. Rosen and SMCRT. (Kore Paper 7).   In case number 09-1663 ("the Rood Appeal"), Mr. Rosen and SMCRT appeal from the bankruptcy court's partial grant of a motion to dismiss filed by Debtor's parents, Robert F. Rood, III, and Grace Ann Rood (together, "the Roods").   Because the facts and legal arguments are adequately presented in the briefs and record, oral argument is deemed unnecessary.   *See* Fed.R.Bankr.P. 8012; Local Rule 105.6.   For the reasons that follow, the motion to dismiss the Kore Appeal will be granted, and the bankruptcy court's order in the Rood Appeal will be affirmed.

## I.   Background

The following facts, common to both appeals, are uncontroverted unless otherwise indicated.   On May 29, 2008, Debtor filed a voluntary petition under Chapter 7 of the United States Bankruptcy Code.   At that time, Debtor owned and held one hundred percent interests in the following business entities:

---

[2]   As part of a motion for authorization to obtain superpriority secured financing in the main bankruptcy proceeding (bankr. case no. 08-17199, dkt. no. 124), Mr. Rosen and SMCRT agreed to prosecute certain causes of action jointly, including those set forth in the adversary complaint underlying both of these appeals.   The bankruptcy court granted that motion on January 8, 2009.   (*Id*. at Dkt. No. 142).

Blue Horseshoe Capital, LLC, Blue Horseshoe Portfolio Services, LLC, Level One Capital Partners, LLC (a Nevada LLC), Level One Capital Partners, LLC (a Maryland LLC), Matterhorn Financial, LLC, and The Source, LLC (collectively, "the Debtor Entities"). Mr. Rosen was appointed as Chapter 7 Trustee in Debtor's bankruptcy case and subsequently filed voluntary Chapter 7 petitions on behalf of the Debtor Entities. On December 29, 2008, the bankruptcy court administratively consolidated the Debtor Entities' cases with Debtor's bankruptcy case.

Four separate adversary proceedings were commenced within the bankruptcy case. On April 1, 2009, Mr. Rosen and SMCRT initiated the proceeding underlying the instant appeals by filing a complaint for injunctive relief, declaratory relief, and damages against Debtor, Kore, seven wholly-owned Kore subsidiaries, Mr. Jewell, the Roods, Nik Hepler, Warren A. Hughes, Jr., and First Washington Equities, LLC (collectively, "Defendants"). (Kore Paper 3, Att. 1).[3]

---

[3] Kore is a publicly-held Nevada corporation with its principal place of business in Maryland. Debtor is Kore's President and Chief Executive Officer; Mr. Jewell is Kore's Chief Operating Officer; and Mr. Hepler and Mr. Hughes are former Kore employees. The Kore subsidiaries named as defendants in the adversary complaint are Arcadian, Inc., First Washington Financial Corp., Level One Mortgage Capital, Mortgage American Bankers, Source Bio-Plastics, Inc., SunVolt, LLC, and Whiplash Motor Sports, LLC. Debtor is identified as President and Chief Executive Officer of Defendant First Washington

The complaint alleges that in late 2005, Debtor approached SMCRT, a Virginia trust created for the pension funds of employees and officers of Southern Management Corporation, regarding certain business opportunities. Thereafter, Debtor and SMCRT entered into a business relationship whereby Debtor would originate, process, underwrite, and present loan packages to SMCRT for approval, and SMCRT, in turn, would purchase and fund private loans from Debtor. Upon approval of the loan packages, SMCRT would wire the proceeds to a settlement agent designated by Debtor, who would close the loans and disburse the proceeds in accordance with the terms of the loans. Each of the loans, which primarily funded construction and renovation projects, was purportedly secured by at least one parcel of unimproved real property.

Between April 2006 and September 2007, SMCRT purchased thirty-two loans from Debtor, either individually or through one of the Debtor Entities, totaling in excess of $16 million. Only eight of these loans, totaling approximately $3 million, were repaid.[4]   The unpaid loan amounts, totaling approximately

_____

Equities, LLC, and Mr. Jewell is identified as its managing member.

[4] Mr. Rosen and SMCRT allege that the repaid loans were "stalking horses" designed to engender SMCRT's trust and encourage future business for what was essentially a Ponzi scheme orchestrated by Debtor. (Kore Paper 3, Att. 1).

$12,759,600, were allegedly misappropriated by Debtor, who diverted the money through an elaborate network of business entities under his control while repeatedly assuring SMCRT of his *bona fides* and resisting its efforts to obtain an accounting.

The complaint provides a detailed summary of five allegedly fraudulent transactions in which Debtor engaged with the cooperation, aid, and assistance of the other defendants (*id.* ¶¶ 36-70); purports to demonstrate how SMCRT funds were commingled and misused by the defendants (*id.* ¶¶ 71-82); and describes the post-petition efforts of the defendants to thwart discovery of incriminating records and conceal assets (*id.* ¶¶ 88-114). As to all Defendants, the complaint alleges fraud, conversion, civil conspiracy, unauthorized post-petition transfer of assets, and fraudulent conveyance; as to Debtor, Mr. Hepler, and Mr. Hughes, it alleges concealment and/or failure to disclose; and as to Debtor and Mr. Jewell, it asserts a claim for breach of fiduciary duty of loyalty. In addition to damages, the complaint seeks an order directing an accounting of all estate property in possession of the defendants, turnover of estate assets, recovery of amounts fraudulently conveyed, injunctive relief, and a declaration that Defendants are the alter ego of Debtor.

On the same date they filed their complaint, Mr. Rosen and SMCRT also filed an emergency motion for temporary restraining order, preliminary injunction, and request for emergency hearing. (Kore Paper 3, Att. 2). In support of that motion, they attached the affidavit of Suzanne D. Hillman, a Certified Public Accountant and principal in the accounting firm Hillman and Glorioso, PLLC. (Kore Paper 3, Att. 4). The affidavit attests that Ms. Hillman's firm was retained by a court-appointed Receiver in a criminal proceeding involving Debtor and related business entities in the Circuit Court for Montgomery County, Maryland, "to examine [and/or] review business records that were to be produced by the receivership entities . . . to ascertain the disposition of certain funds," including SMCRT loan proceeds. (*Id*. at ¶ 3).[5] Ms. Hillman avers that, as a result of her investigation, she learned the following:

> I have found that [Debtor] had approximately 40 bank accounts under his exclusive control and available for his use. These accounts are held in numerous entity names with the common denominator being that [Debtor] is the sole signatory. Many of these accounts also have debit cards attached; again, [Debtor] is the sole authorized user.

---

[5] Debtor eventually pleaded guilty to criminal charges in that case related to a fraudulent scheme in which he misappropriated approximately $205,000 entrusted to him for the purpose of obtaining a letter of credit. (Kore Paper 3, Att. 52 at ¶ C).

> . . . [Debtor] had sole and exclusive
> financial control over dozens of entities
> including Kore Holdings, Inc. (KHI) a
> publicly held corporation. Further
> investigation has shown that KHI is the
> parent company of a complex web of at least
> 17 entities. [Debtor] is listed as
> President and Chairman of the Board for KHI
> and holds a similar position in all
> subsidiary companies. Although some of the
> subsidiaries appear to be dormant companies
> and have no recognizable income, each entity
> did incur expenses that have been traced as
> being paid from [Level One Capital Partners,
> LLC, and Blue Horseshoe Portfolio Services,
> LLC,] bank accounts. These entities
> include: Kore Holdings, Inc. (KHI), KHI dba
> Level One Capital, LLC, KHI dba Whiplash
> Motor Sports, Arcadian, Inc., First
> Washington Financial Corporation, aka Level
> One Capital LLC, Bay Capital Corporation dba
> Level One Mortgage Capital, Mortgage
> American Bankers, Source Bio-Plastics, Inc.,
> Sunvolt, Whiplash Motor Sports, LLC, First
> Washington Equities, LLC, and Arcadia, Inc.

(*Id.* at ¶¶ 13, 14).

On April 2, 2009, the bankruptcy court held a hearing on the emergency motion for temporary restraining order. At the outset of that hearing, counsel for Mr. Rosen advised the court that an agreement had been reached with respect to five of the defendants for purposes of the temporary restraining order. As relevant to the instant appeals, counsel advised the court as follows regarding the Roods:

> Your Honor, with respect to Grace and
> Robert Rood, III, they will agree pending
> further order of this Court to not transfer
> or encumber any of their property. They
> will agree to make no transfers, direct or

> indirect, to their son, the debtor, Robert
> Rood, IV, or Kore Holdings, Inc. or any
> affiliates of Kore Holdings, Inc., and they
> will agree not to transfer a Dodge Viper
> which is an asset that the trustee believes
> is an asset of the debtor's estate.   Mr.
> Rood, III, has asserted that he owns that
> vehicle.

(Kore Paper 3, Att. 7 at 6-7).[6]   At the conclusion of that

hearing, the bankruptcy court issued an order temporarily

restraining the remaining defendants, with the exception of Mr.

Jewell, from "[t]ransferring, encumbering, or impairing any

property (real or personal) in their possession, custody or

control," and from "engaging in any business operations,

directly or indirectly, that in any way involves the sale,

transfer, impairment or encumbering of any asset of their

businesses." (Kore Paper 3, Att. 6 at 5).   The order also set a

date of April 13, 2009, for a hearing on the motion for

preliminary injunction.

On April 8, 2009, the Roods filed a motion to dismiss all

counts of the adversary complaint relating to them pursuant to

Fed.R.Civ.P. 9(b) and 12(b)(6), as incorporated by

Fed.R.Bankr.P. 7009(b) and 7012(b)(6).   (Rood Paper 5, Att. 2).

Mr. Rosen and SMCRT jointly filed opposition papers on April 27,

2009 (Rood paper 6, att. 15), and a hearing was held on May 28,

---

[6] Similar agreements were reached and placed on the record
with respect to Mr. Hughes, Mortgage American Bankers, and
Kaptain Koontz, an officer of Mortgage American Bankers.

2009, during which the bankruptcy court orally granted in part and denied in part the motion to dismiss (Rood paper 9, att. 2). On June 5, 2009, the court issued a written order consistent with its oral ruling. (Rood Paper 1, Att. 2). The Rood Appeal followed shortly thereafter.

Meanwhile, the motion for preliminary injunction was considered, along with a number of other motions, at court proceedings held on a series of dates in or around April 2009. On one of those dates, April 29, 2009, Mr. Rosen and SMCRT withdrew their request for a preliminary injunction as to the Roods after those defendants stated on the record that they would not make any further transfers, either directly or indirectly, to Debtor, their son. (Kore Paper 3, Att. 52 at 2). Additionally, on May 29, 2009, a consent order was entered granting a preliminary injunction as to Mr. Hughes, another individual defendant. (*Id.*).

On September 8, 2009, the bankruptcy court issued an order granting the motion for preliminary injunction as to Debtor, Mr. Jewell, Mr. Hepler, Kore, Whiplash Motor Sports, LLC, Source Bio-Plastics, Inc., Arcadian, Inc., Level One Mortgage Capital, SunVolt, LLC, Mortgage American Bankers, First Washington Financial Corporation, and First Washington Equities, LLC, enjoining them, *inter alia*, "from taking any action or making any transfers of any property or assets or engaging in any

financial or business transactions pending further Order of the Court." (Kore Paper 3, Att. 52 at 7).[7] The order further provided, however, that "the enjoined Defendants may seek [] relief from the provisions of this injunction by filing a Motion seeking such relief and specifying circumstances requiring such relief." (*Id.* at 8). On the same date that the order granting the preliminary injunction was issued, a number of the defendants moved for reconsideration. (Kore Paper 3, Att. 53). That motion was denied by an order of the bankruptcy court dated September 23, 2009. (Kore Paper 3, Att. 77).

On September 29, 2009, Kore, six of its wholly-owned subsidiaries – *i.e.*, Arcadian, Inc., First Washington Financial Corp., Mortgage American Bankers, Source Bio-Plastics, Inc., SunVolt, LLC, and Whiplash Motor Sports, LLC – and Mr. Jewell (collectively, "Kore Appellants") filed a timely notice of appeal from the bankruptcy court's grant of the preliminary injunction and denial of their motion to reconsider. (Kore Paper 1, Att. 2). Concomitantly, the Kore Appellants moved the bankruptcy court for a stay pending appeal. (Kore Paper 3, Att. 79). Following another round of briefing, the court held a

---

[7] The order incorporated the findings of fact and conclusions of law set forth by the bankruptcy court in a memorandum of decision dated August 19, 2009. (Kore Paper 3, Att. 51).

hearing on October 6, 2009, and orally denied that motion. (Kore Paper 3, Att. 85 at 17).

## II.  Motion to Dismiss the Kore Appeal

The Kore Appellants filed their appellate brief on November 11, 2009, asserting that they were appealing from "a Final Order pursuant to Bankruptcy Rule 7065 and Fed.R.Civ.P. 65." (Kore Paper 6, at 4).[8]  Mr. Rosen and SMCRT responded, on November 19, 2009, by filing a motion to dismiss the appeal. (Kore Paper 7). They contend that the order from which the Kore Appellants seek to appeal is interlocutory; that, as such, they were required to obtain leave of the court prior to filing, but did not; and that because they cannot satisfy the requirements for granting leave, their appeal must be dismissed. The court agrees.

The jurisdiction of a district court to hear appeals from bankruptcy courts is conferred by 28 U.S.C. § 158(a), which provides, in relevant part:

> (a) The district courts of the United States shall have jurisdiction to hear appeals
>
> (1) from final judgments, orders, and decrees;
>
> (2) from interlocutory orders and decrees issued under section 1121(d) of title 11

---

[8] Unlike the order at issue in the Rood Appeal, the order underlying the Kore Appeal was not certified by the bankruptcy court as a final order; moreover, Fed.R.Bankr.P. 7065, which incorporates Fed.R.Civ.P. 65, does not provide an immediate right of appeal.

increasing or reducing the time periods
referred to in section 1121 of such title;
and

(3) with leave of the court, from other
interlocutory orders and decrees[.]

Thus, by statute, an appeal of right exists only from a final
judgment, and any other appeal, *i.e.*, from an interlocutory
order, may lie only upon obtaining leave of the court.

What constitutes a final judgment in a bankruptcy
proceeding is more forgiving than the standard applying to civil
proceedings under 28 U.S.C. § 1291. "As a general rule, a final
judgment under 28 U.S.C. § 1291 is 'one which ends the
litigation . . . and leaves nothing for the court to do but
execute the judgment.'"  *In re Hebb*, 53 B.R. 1003, 1005 (D.Md.
1995) (quoting *Catlin v. United States*, 324 U.S. 229, 233
(1945)).  An interlocutory order, by contrast, is "one which
does not finally determine a cause of action but only decides
some intervening matter pertaining to the cause, and which
requires further steps to be taken to enable the court to
adjudicate the cause on the merits."  *In re Hebb*, 53 B.R. at
1005.  In the bankruptcy context, however, the concept of
finality "has traditionally been applied 'in a more pragmatic
and less technical way . . . than in other situations.'"  *A.H.
Robins Co., Inc. v. Piccinin*, 788 F.2d 994, 1009 (4th Cir. 1986)
(quoting *In re Amatex Corp.*, 755 F.2d 1034, 1039 (3rd Cir.

1985)).    Orders  in  bankruptcy  cases  "'may  be  immediately
appealed  if  they  finally  dispose  of  discrete  disputes  within  the
larger  case.'"  *In  re  Computer  Learning  Centers,  Inc.*,  407  F.3d
656,  660  (4th  Cir.  2005)  (quoting  *In  re  Saco  Local  Dev.  Corp.*,
711  F.2d  441,  444  (1st  Cir.  1983)).

As  the  United  States  District  Court  for  the  Eastern
District  of  Virginia  explained  in  *In  re  Swyter*,  263  B.R.  742,
746  (E.D.Va.  2001):

> The  reasons  for  this  are  well-established.
> In  *In  re  Saco  Local  Development  Corp.*,  711
> F.2d  441  (1st  Cir.  1983),  Justice  Breyer,
> then  a  First  Circuit  judge,  traced  the
> concept  of  finality  in  bankruptcy
> proceedings  and  concluded  that
> considerations  unique  to  bankruptcy  appeals,
> such  as  the  protracted  nature  of  the
> proceedings  and  the  large  number  of
> interested  parties,  require  a  less  rigorous
> application  of  the  finality  rule.  *See  id*.  at
> 443-48.  Put  differently,  "[t]o  avoid  the
> waste  of  time  and  resources  that  might
> result  from  reviewing  discrete  portions  of
> the  action  only  after  a  plan  of
> reorganization  is  approved,  courts  have
> permitted  appellate  review  of  orders  that  in
> other  contexts  might  be  considered
> interlocutory."  *Dalkon  Shield*,  828  F.2d  at
> 241  (quoting  *In  re  Amatex  Corp.*,  755  F.2d  at
> 1039;  *see  also  In  re  Mason*,  709  F.2d  1313,
> 1316  (9th  Cir.  1983)  (holding  that  finality
> must  be  determined  "in  light  of  the  unique
> nature  of  bankruptcy  procedure  and  not  with
> blind  adherence  to  the  rules  of  finality").
> Thus,  for  example,  the  decision  to  appoint  a
> trustee  or  an  examiner  is  a  final  appealable
> order  because  to  hold  otherwise  would  delay
> review  of  the  decision  until  "a  final  plan
> is  approved"  and  "may  well  cause  several
> years  of  hearings  and  negotiations  to  be

wasted." *In re Amatex*, 755 F.2d at 1040 (cited with approval in *Dalkon Shield*, 828 F.2d at 241). Furthermore, the decision to set aside the sale of a bankruptcy asset and to reopen proceedings is also final and appealable because it "finally determines" a creditor's position vis-a-vis the debtor and places any resale of assets in considerable doubt. *In re Irvin*, 950 F.2d 1318, 1319 (7th Cir. 1991); *see In re Gould*, 977 F.2d 1038, 1041 (7th Cir. 1992). In sum, these cases stand for the proposition that an order is final and appealable if it (i) finally determines or seriously affects a party's substantive rights, or (ii) will cause irreparable harm to the losing party or waste judicial resources if the appeal is deferred until the conclusion of the bankruptcy case. *See In re Mason*, 709 F.2d at 1316 (citing R. Levin, Bankruptcy Appeals, 59 N.C. L.Rev. 967, 985-86 & n. 140).

Even considering the "more liberal construction of finality as applied to appeals in bankruptcy cases," *A.H. Robins Co., Inc.*, 788 F.2d at 1009, the order from which the Kore Appellants seek to appeal cannot be construed as a final order. The fact that the adversary proceeding continued after the preliminary injunction was granted – indeed, it is still ongoing – demonstrates that the order did not finally determine the substantive rights of the Kore Appellants in the bankruptcy case, nor did it "finally dispose of discrete disputes within the larger case." *In re Saco Local Dev. Corp.*, 711 F.2d at 444. Plainly, it did not resolve any of the claims at issue in the adversary proceeding – *i.e.*, fraud, conversion, civil

conspiracy, concealment, and breach of fiduciary duty – and it did not determine damages. There is no risk, moreover, that judicial resources would be wasted if an appeal is deferred until the conclusion of the adversary proceeding. In fact, Mr. Rosen and SMCRT assert that a merits trial in the adversary proceeding is currently scheduled for April 6, 2010. (Kore paper 7, at 4). Thus, the preliminary injunction that is the subject of the instant appeal likely will be dissolved within a matter of weeks. Although the Kore Appellants allege that irreparable harm will result if the preliminary injunction is not lifted immediately, the bankruptcy court's order permitted any affected party to petition the court for "relief from the provisions of [the] injunction," and the record reflects that none of the Kore Appellants have sought such relief in the six-plus months since it was issued. *See In re Quigley*, 323 B.R. 70, 74-75 (S.D.N.Y. 2005) (finding bankruptcy court's order granting preliminary injunction was interlocutory where, *inter alia*, it "explicitly [laid] out a process by which individual claimants [could] seek relief"). Considering that the ultimate issues will be conclusively decided in the very near future, there is little chance that irreparable harm will result if the appeal is not decided now.

The Kore Appellants assert that the grant of a preliminary injunction is immediately appealable as demonstrated by the fact

that "the caselaw in the federal system, and the Fourth Circuit, is filled with appeals related to the enforcement of a preliminary injunction prior to a trial on the merits," citing, *inter alia*, *Winter v. Natural Resources Defense Council, Inc.*, --- U.S. ----, 129 S.Ct. 365, 374-76 (2008), and *The Real Truth About Obama, Inc. v. Federal Election Commission*, 575 F.3d 342 (4th Cir. 2009).   (Kore Paper 9, at 5).   The cited cases, however, involve appeals from grants of preliminary injunctions by district courts to courts of appeals.   Such orders are immediately appealable pursuant to 28 U.S.C. § 1291(a)(1).   The order at issue here, *i.e.*, from a bankruptcy court to a district court, is governed by a different section, namely, 28 U.S.C. § 158.   Pursuant to that provision, and the case law interpreting it, the bankruptcy court's order was not a final judgment.

Because the order granting the preliminary injunction is interlocutory, the Kore Appellants could appeal from it only upon obtaining leave of the court.   *See* 28 U.S.C. § 158(a)(3). While the Kore Appellants did not formally request leave to appeal in this case, their timely-filed notice of appeal will be treated as a motion for leave to appeal pursuant to Fed.R.Bankr.P. 8003(c).   *See In re Swann Ltd Partnership*, 128 B.R. 138, 139-40 (D.Md. 1991).

The relevant standard for considering a motion for leave to appeal from an order of the bankruptcy court was set forth in

*KPMG Peat Marwick, L.L.P. v. Estate of Nelco, Ltd., Inc.*, 250

B.R. 74, 78 (E.D.Va. 2000):

> In seeking leave to appeal an interlocutory
> order or decision [of a bankruptcy court],
> the appellant must demonstrate "that
> exceptional circumstances justify a
> departure from the basic policy of
> postponing appellate review until after the
> entry of a final judgment." *Coopers &
> Lybrand*, 437 U.S. at 475, 98 S.Ct. 2454
> (citing *Fisons, Ltd. v. United States*, 458
> F.2d 1241, 1248 (7th Cir. 1972)). When
> deciding whether to grant leave to appeal an
> interlocutory order or decree of a
> bankruptcy court, the district court may
> employ an analysis similar to that applied
> when certifying interlocutory review by the
> circuit court of appeals under 28 U.S.C. §
> 1292(b). *Atlantic Textile Group, Inc. v.
> Neal*, 191 B.R. 652, 653 (E.D.Va. 1996)
> (citations omitted). Under this analysis,
>
>> leave to file an interlocutory appeal
>> should be granted only when 1) the
>> order involves a controlling question
>> of law, 2) as to which there is
>> substantial ground for a difference
>> of opinion, and 3) immediate appeal
>> would materially advance the
>> termination of the litigation.
>
> *Id.* (citations omitted).

If any one of these three elements is unsatisfied, leave to

appeal cannot be granted.  *See KPMG Peat Marwick, L.L.P.*, 250

B.R. at 79; *In re Air Cargo, Inc.*, Civ. No. CCB-08-587, 2008 WL

2415039, *3 (D.Md. June 11, 2008) (unpublished).

   The Kore Appeal does not involve a controlling question of

law.  "An order involves a controlling question of law when

either (1) reversal of the bankruptcy court's order would terminate the action, or (2) determination of the issue on appeal would materially affect the outcome of the litigation." *In re Travelstead*, 250 B.R. 862, 865-66 (D.Md. 2000); *see also Fannin v. CSX Transp., Inc.*, 873 F.2d 1438, *5 (4th Cir. 1989) (Table) (a controlling question of law is "a narrow question of pure law whose resolution will be completely dispositive of the litigation, either as a legal or practical matter, whichever way it goes").    Reversal on the issues presented by the Kore Appellants – *i.e.*, whether Ms. Hillman was properly permitted to testify as a qualified forensic accountant; whether the requisite burden of proof was met for issuing the preliminary injunction; and whether the scope of the injunction was overbroad (Kore paper 6, at 4) – clearly would not terminate the action.    Moreover, determination of the appeal would have little effect on the outcome of the litigation.    In fact, the preliminary injunction will be dissolved upon the issuance of a final judgment, and if that judgment is unfavorable to the Kore Appellants, an appeal raising similar issues will likely be before this court shortly thereafter.    *See In re Moody*, 817 F.2d 365, 367-68 (5th Cir. 1987) ("a bankruptcy court order ending a separate adversary proceeding is appealable as a final order even though that order does not conclude the entire bankruptcy case" (citing *In re Saco Local Dev. Corp.*, 711 F.2d at 445-46)).

Because the bankruptcy court's order does not involve a controlling question of law, there could be no substantial ground for a difference of opinion regarding a controlling question of law, nor could an immediate appeal materially advance the termination of the litigation. In other words, because the first element of the analysis set forth in *KPMG Peat Marwick, L.L.P.*, is not present, the remaining two are essentially moot.

In opposing the motion to dismiss the appeal, the Kore Appellants have not addressed the relevant issues in any meaningful way. For example, they merely state their "amaze[ment] that Appellees would suggest that the Bankruptcy Court's ruling that Kore is an Alter Ego of the Debtor is not a controlling question of law . . . [that has] a substantial ground for a difference of opinion." (Kore Paper 9, at 4). If that were an accurate statement of the bankruptcy court's ruling, their point would be well taken; however, it is not. Insofar as the ultimate merits are concerned, the bankruptcy court found only that Mr. Rosen and SMCRT met their burden of establishing a likelihood of success on the merits, as any court is required to do prior to issuing a preliminary injunction. (Kore Paper 3, Att. 51 at 5); *see also The Real Truth About Obama, Inc.*, 575 F.3d at 345-46. While that ruling may not bode well for the Kore Appellants' chances of prevailing at trial, it

clearly was not a final determination that Kore is Debtor's alter ego.

The Kore Appellants further assert that the bankruptcy court "specifically provided that an appeal was proper," citing an instance during the October 6, 2009, hearing on their motion for a stay pending appeal in which the bankruptcy judge opined, during a colloquy with counsel for Mr. Rosen, "[o]f course [the Kore Appellants] can appeal a preliminary injunction. . . . I don't see the hurdles that you do to making an appeal of the order granting preliminary injunction." (Kore Paper 3, Att. 85 at 11)). The Kore Appellants appear to treat these words as the authorization of the bankruptcy court to appeal the grant of the preliminary injunction immediately. What they ignore, however, is that their notice of appeal had already been filed at that point. Thus, the bankruptcy judge's *post hoc* opinion on the matter could not have influenced their decision to file the appeal.[9]

---

[9] The bankruptcy court obviously knows how to designate an interlocutory order it deems worthy of immediate appeal. The order partially granting the Roods' motion to dismiss explicitly states, "although this Order does not dispose of all claims as to all parties in this adversary proceeding, [it] shall be entered as a final Order . . . so that Plaintiffs may immediately note an appeal as to those issues adversely determined by the Court." (Rood Paper 1, Att. 2 at 2). The order granting the preliminary injunction (Kore paper 3, att. 6), by contrast, contains no such language.

Because the Kore Appellants have failed to make the requisite showing with respect to a motion for leave to appeal, leave will not be granted. Accordingly, the Kore Appeal will be dismissed.

## III. The Rood Appeal

At the May 28, 2009, hearing on the Roods' motion to dismiss the adversary complaint, the bankruptcy court dismissed five counts – i.e., Count I (fraud), Count III (civil conspiracy), Count VI (post-petition transfer of assets), Count XI (accounting), and Count XIII (declaratory judgment/alter ego) – as to both defendants, and Count II (conversion) as to Mrs. Rood alone. (Rood Paper 9, Att. 2). The court's oral ruling was followed by a written order dated June 5, 2009. (Rood Paper 1, Att. 2). After filing a timely notice of appeal, Mr. Rosen and SMCRT ("the Rood Appellants") filed an appellate brief raising the following issues:

> 1. Did the bankruptcy court err when it dismissed Counts I, III, VI, XI and XIII of the Complaint as to Robert F. Rood, III, and Counts I, II, III, VI, XI and XIII of the Complaint as to Grace Ann Rood?

> 2. Did the bankruptcy court err when it failed to grant the Appellants leave to amend the Complaint before granting dismissal of Counts I, III, VI, XI and XIII of the Complaint as to Robert F. Rood, III, and Counts I, II, III, VI, XI and XIII of the Complaint as to Grace Ann Rood?

(Rood Paper 12, at 1).

**A.   Motion to Dismiss**

**1.   Standard of Review**

The court reviews the bankruptcy court's dismissal for failure to state a claim under a *de novo* standard of review. *See Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1998).

Federal Rule of Civil Procedure 12(b)(6) applies to adversary proceedings in bankruptcy cases pursuant to Fed.R.Bankr.P. 7012(b).   The purpose of a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) is to test the sufficiency of the complaint.   *See Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999).   Except in certain specified cases, a plaintiff's complaint need only satisfy the "simplified pleading standard" of Rule 8(a), *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513 (2002), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2).   Nevertheless, "Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief."   *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 n.3 (2007).   That showing must consist of more than "a formulaic recitation of the elements of a cause of action" or "naked assertion[s] devoid of further factual enhancement."

*Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (internal citations omitted).

In its determination, the court must consider all well-pled allegations in a complaint as true, *Albright v. Oliver*, 510 U.S. 266, 268 (1994), and must construe all factual allegations in the light most favorable to the plaintiff. *See Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783 (4th Cir. 1999) (citing *Mylan Labs.*, 7 F.3d at 1134). The court need not, however, accept unsupported legal allegations, *Revene v. Charles County Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989), legal conclusions couched as factual allegations, *Iqbal*, 129 S.Ct. at 1950, or conclusory factual allegations devoid of any reference to actual events, *United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979). *See also Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged, but it has not 'show[n] . . . that the pleader is entitled to relief.'" *Iqbal*, 129 S.Ct. at 1950 (quoting Fed.R.Civ.P. 8(a)(2)). Thus, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

Because Mr. Rosen and SMCRT have alleged that the Roods engaged in fraud, some of their claims are subject to the heightened pleading standard of Fed.R.Civ.P. 9(b).   *See* Fed.R.Bankr.P. 7009 (applying Fed.R.Civ.P. 9 to adversary proceedings); *Harrison*, 176 F.3d at 783-84.   Rule 9(b) states that "in all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity.   Malice, intent, knowledge, and other conditions of mind of a person may be averred generally."

The purpose of Rule 9(b) is to provide the defendant with sufficient notice of the basis for the plaintiff's claim, protect the defendant against frivolous suits, eliminate fraud actions where all of the facts are learned only after discovery, and safeguard the defendant's reputation.   *Harrison*, 176 F.3d. at 784.   In keeping with these objectives, a "court should hesitate to dismiss a complaint under Rule 9(b) if the court is satisfied (1) that the defendant has been made aware of the particular circumstances for which [it] will have to prepare a defense at trial and (2) that [the] plaintiff has substantial prediscovery evidence of those facts."   *Id*.

**2.   Analysis**

**a.   Counts I and III: Fraud and Civil Conspiracy**

There is essentially no distinction between the first and third counts of the adversary complaint.   The first count,

labeled "fraud," alleges that Debtor, "by and through" the corporate defendants "and with the assistance and participation" of the remaining individual defendants, including the Roods, "diverted millions of dollars to the Defendants." (Rood Paper 6, Att. 1 at ¶ 125). In other words, as the Rood Appellants clarify in their brief, "[t]he Defendants, as a group, took concerted actions to defraud creditors and are equally responsible as co-conspirators." (Rood Paper 12, at 12). The third count of the complaint, labeled "civil conspiracy," alleges that Defendants "agreed or understood that they would act in confederation to commit a fraud upon SMCRT." (Rood Paper 6, Att. 1 at ¶ 135). Thus, the first count alleges fraud *via* conspiracy, and the third alleges a conspiracy to commit fraud.

Indeed, counsel for Mr. Rosen acknowledged the interdependency of these two counts at the hearing on the motion to dismiss:

> We believe, Your Honor, that the starting point with respect to the sufficiency of the allegations against . . . Mr. and Mrs. Rood, the parents, is to start at Count III. That is the conspiracy count and that is the count which we believe, for lack of a better term, provides the linkage to the extent necessary to all of the other counts.
> . . . .
> [O]nce we establish the conspiracy, then the acts of each of the conspirators are attributable to all of the conspirators so that you do not need to have all four or five elements of fraud committed by each of the conspirators. Perhaps three or four

> elements are committed by one; one by
> another; perhaps none by, overtly, by one of
> the conspirators, but the acts of all of the
> conspirators are attributable to all of them
> and we believe that is really how you have
> to look at the complaint and view the motion
> to dismiss.

(Rood Paper 9, Att. 2 at 21-22). At the conclusion of this argument, the bankruptcy judge inquired of counsel for Mr. Rosen, "What you're suggesting to me is that if I don't dismiss Count III, that I can't dismiss Count I," to which counsel replied, "That would be our position, Your Honor." (*Id*. at 24).

The thrust of the Rood Appellants' argument, both in their complaint and on appeal, is that because of the conspiracy that allegedly existed among the defendants, the acts of any one member in furtherance thereof may be imputed to all co-conspirators. Thus, they assert, "it is not necessary that the Rood Parents commit an unlawful act themselves, as long as they committed acts in furtherance of the unlawful enterprise," such as transferring money to Debtor, their son. (Rood Paper 12, at 13). The problem, however, is that the complaint fails to plead sufficient facts demonstrating that the Roods were part of the alleged conspiracy, particularly under the heightened requirements of Fed.R.Civ.P. 9(b). Consequently, the unquestionably fraudulent acts of the remaining defendants cannot be imputed to them, and because there are no independent

allegations of fraud on the part of the Roods, both claims must fail.

Judge Nickerson set forth the relevant standard regarding civil conspiracy in *Hill v. Brush Engineered Materials, Inc.*, 383 F.Supp.2d 814, 821 (D.Md. 2005):

> In Maryland, "a civil conspiracy is a combination of two or more persons by an agreement or understanding to accomplish an unlawful act or to use unlawful means to accomplish an act not in itself illegal, with the further requirement that the act or means employed must result in damages to the plaintiff." *BEP, Inc. v. Atkinson*, 174 F.Supp.2d 400, 408 (D.Md. 2001) (citing *Green v. Washington Sub. San. Comm'n*, 259 Md. 206, 269 A.2d 815, 824 (1970)). A clear agreement to conspire is necessary because the "[i]ndependent acts of two wrongdoers do not make a conspiracy." *Murdaugh Volkswagen, Inc. v. First Nat. Bank of South Carolina*, 639 F.2d 1073, 1076 (4th Cir. 1981). The conspired unlawful act does not have to be criminal, but requires "the violation of a legal right committed knowingly to create a cause of action." *BEP*, 174 F.Supp.2d at 409 (citing *Columbia Real Estate Title Ins. Co. v. Caruso*, 39 Md. App. 282, 384 A.2d 468, 472 (1978)). Conspiracy is not a tort on its own, but is dependent on some underlying tort that caused injury to the plaintiff. *Estate of White* [*ex rel. White v. R.J. Reynolds Tobacco Co.*, 109 F.Supp.2d 424, 428 (D.Md. 2000)] (citing *Alexander & Alexander, Inc. v. B. Dixon Evander & Assoc.*, 336 Md. 635, 650 A.2d 260, 265 n. 8 (1994)).

Where, as here, the alleged conspiracy was to commit fraud, the complaint must also "abide by Rule 9(b)'s particularity requirements":

> "The more specific requirements for an
> allegation of conspiracy are that the
> pleader provide, whenever possible, some
> details of the time, place and alleged
> effect of the conspiracy." *Nat'l
> Constructors Ass'n v. Nat'l Elec.
> Contractors Ass'n, Inc.*, 498 F.Supp. 510,
> 528 (D.Md. 1980) (internal citations and
> quotations omitted); *see also Odyssey Re
> (London) Ltd. v. Stirling Cooke Brown
> Holdings Ltd.*, 85 F.Supp.2d 282, 297
> (S.D.N.Y. 2000) ("A proper allegation of a
> conspiracy to commit fraud in a civil
> complaint must set forth with certainty
> facts showing particularly: (1) what a
> defendant or defendants did to carry the
> conspiracy into effect; (2) whether such
> acts fit within the framework of the
> conspiracy alleged; and (3) whether such
> acts, in the ordinary course of events,
> would proximately cause injury to the
> plaintiff.") (citations omitted); *Waller v.
> Butkovich*, 584 F.Supp. 909, 931 (M.D.N.C.
> 1984) ("Plaintiffs must expressly allege an
> agreement or make averments of
> 'communication, consultation, cooperation,
> or command' from which such an agreement can
> be inferred.") (citing *Weathers v. Ebert*,
> 505 F.2d 514, 517 (4th Cir. 1974)).

*Hill*, 383 F.Supp.2d at 823-24.

Assuming the truth of all well-pled averments in the complaint, as the court must in considering a motion to dismiss, the Rood Appellants have fallen well short of the mark. The extensive complaint contains the following particularized allegations with respect to the Roods:

- "[Mr. Rood, III] admitted to two transfers in the amount of $10-12,000 from his accounts to the Debtor made via First Washington Equities" (Rood paper 6, att. 1 at ¶ 72);

- "[Kore] purchased an $80,000, 2006 Cadillac XLR for [Mr. Rood, III's] personal use and enjoyment. However, Defendant [Kore] never paid for the Cadillac. . . . Instead, the Debtor made $31,315.04 in payments for the Cadillac from Level One and Blue Horseshoe's bank accounts" (*id.* at ¶ 78);

- "In September 2007, the Debtor again used Blue Horseshoe's account to the benefit of [Mr. Rood, III] when the Debtor paid $5,100 for legal fees in connection with the sale of his parents' restaurant, Flaps" (*id.*);

- "Grace Rood testified that she and her husband had been paying the rent for the Debtor's four-five bedroom house for the past five or six months. . . . She further testified that in addition to paying the Debtor's rent, the Debtor's parents had paid for the Debtor[']s business and personal expenses including insurance, legal fees, and utility bills" (*id.* at ¶ 93);

- "[Mr. Rood, III,] authorized the Debtor to wire $6,350 into a First Washington Equities account from [his] account" (*id.* at ¶ 111);

- "Debtor's parents . . . provid[ed] the Debtor with approximately $200,700 in cash, including transfers to the Debtor Entities and to Defendant Hepler.  These transfers included a wire transfer, on or about May 22, 2008, to First Washington Equities in the amount of $30,000 and a wire transfer to Defendant Hepler in the amount of $5,000" (*id.* at ¶ 112).

While these allegations may be sufficient to demonstrate that the Roods enabled Debtor to continue his fraudulent schemes, they provide no basis for concluding that they did so wittingly.  Aside from conclusory allegations, the complaint is completely silent as to any agreement or understanding by and between the Roods and the other defendants to accomplish the unlawful act of defrauding SMCRT of the loan proceeds.  In stark

contrast to the detailed allegations demonstrating how Debtor, Mr. Hepler, and Mr. Jewell funneled SMCRT's money through a network of affiliated business entities, the allegations with respect to the Roods fail to demonstrate any nexus between them and the funds that were allegedly misappropriated.   The Rood Appellants argue that "the Defendants entered into a scheme to defraud SMCRT by setting up phony loan transactions and keeping the funds that SMCRT lent for the purpose of purchasing loans," and that "[t]he Rood Parents' part in the conspiracy involved transferring funds to and from their son to enable him to carry out this enterprise."  (Rood Paper 12, at 21).   This argument, which purports to address the agreement that existed between the co-conspirators, merely begs the question by assuming that the Roods were part of the conspiracy in the first place.

There are also no allegations in the complaint establishing an independent basis of fraud as to the Roods.   To sustain a claim of fraud under Maryland law, the complaint must allege (1) that a false representation was made; (2) that its falsity was known to the speaker at the time it was made, or that it was made with reckless indifference to the truth; (3) that the false representation was made for the purpose of defrauding the injured party; (4) that the injured party relied on the misrepresentation; and (5) that damages resulted.  *See Martens Chevrolet, Inc. v. Seney*, 292 Md. 328, 333 (1982).  The instant

complaint says nothing with regard to the Roods making a false representation to any party.  Indeed, as the Rood Appellants acknowledged at the motions hearing, the Roods' liability for fraud is contingent on imputing the fraudulent acts of the alleged co-conspirators onto them.  Because the complaint is insufficient to establish their conspiratorial liability, however, there is no basis for doing so.  Accordingly, the bankruptcy court properly dismissed the first and third counts of the complaint, alleging fraud and civil conspiracy.

### b.  Count II: Conversion as to Mrs. Rood

While the conversion count purportedly applies to "All Defendants," its substance makes no mention of either Mr. or Mrs. Rood.  (Rood Paper 6, Att. 1 at ¶¶ 128-33).  On appeal, the Rood Appellants contend, as they did at the motions hearing, that a $5,100 payment by Debtor to an attorney in satisfaction of a legal debt associated with a family-owned restaurant constitutes conversion, as does the use of a "Cadillac, with a value of more than $100,000 [that] was purportedly a gift from the Debtor to his father." (Rood Paper 12, at 17).  Observing that these arguments did not address liability as to Mrs. Rood, the bankruptcy court dismissed this count as to her.  It properly did so.

In *Hamilton v. Ford Motor Credit Co.*, 66 Md. App. 46, 64, *cert. denied*, 306 Md. 118 (1986), the Maryland Court of Special Appeals explained:

> The law in Maryland concerning conversion says generally that conversion is any distinct act of ownership or dominion exerted by one person over the personal property of another in denial of his right or inconsistent with it. *Interstate Insurance Company v. Logan*, 205 Md. 583, 588-89, 109 A.2d 904 (1954); *Staub v. Staub*, 37 Md.App. 141, 142-43, 376 A.2d 1129 (1977). Maryland law also states specifically that in order to recover for conversion one must either have been in actual possession or have had the right to immediate possession. *Dungan v. Mutual Benefit Life Insurance Company of New Jersey*, 38 Md. 242, 249 (1873); Lawrence v. Graham, 29 Md.App. 422, 423-28, 349 A.2d 271 (1975).

In Maryland, as in most jurisdictions, money cannot be the subject of a claim for conversion unless it is shown that "the defendant converted specific segregated or identifiable funds." *Allied Investment Corp. v. Jasen*, 354 Md. 547, 564 (1999).

Assuming that use and possession of the Cadillac constitutes the basis of the alleged conversion, and that Mrs. Rood shared in use and enjoyment of the vehicle that was purportedly a gift to her husband, the complaint does not allege that she did so with the knowledge that it was the personal property of another. Indeed, under the facts presented, it is unclear who such other person could have been. The Rood

Appellants contend that the Cadillac was purchased by Debtor, through Kore, with money misappropriated from SMCRT.  While that may be the case, those facts fail to establish liability for conversion, even as to Debtor or Kore, because the *res* of the alleged conversion was money, not personal property.  As noted, money, which is typically fungible, cannot be the subject of a claim for conversion unless it is a specific, segregated pool of money, thereby making it non-fungible.  No such showing has been made here with respect to either the Cadillac or the legal debt allegedly paid by Debtor on behalf of his father.  Accordingly, the claim for conversion as to Mrs. Rood was properly dismissed.

### c.   Count VI: Unauthorized Post-Petition Transfer of Assets

At the hearing on the motion to dismiss, counsel for the Roods argued, "[t]here is no allegation that any assets were transferred to my clients post[-]petition and for that reason, Count VI should be dismissed as to my clients."  (Rood Paper 9, Att. 2 at 32).  In response, counsel for Mr. Rosen pointed to Paragraph 113 of the complaint, which alleges, "Post-Petition, Defendants Rood Sr. and Grace Rood, continued to provide the Debtor with financial assistance to enable him to continue his operations," specifically by paying "approximately $70,804, including rent payments, and transfers to the Debtor Entities." (Rood Paper 6, Att. 1 at ¶ 113).  The bankruptcy judge responded

by stating, "I don't see it," and dismissed the claim as to both defendants.   (Rood Paper 9, Att. 2 at 33).

On appeal, the Rood Appellants point to two additional allegations in the complaint of unauthorized post-petition transfers – namely, an occasion in which Mr. Rood authorized Debtor to wire $6,350 into the account of First Washington Equities (¶ 111), and that the Roods continued to pay Debtor's living expenses and legal fees (¶ 93).   (Rood Paper 12, at 23). Notably, the Roods have failed to address this count altogether in their brief.  As such, the court deems them to have rested on the argument presented in the court below.

Section 549(a) of the Bankruptcy Code provides, in pertinent part, that "the trustee may avoid a transfer of property of the estate . . . that occurs after commencement of the case; and . . . that is not authorized under this title or by the court."  11 U.S.C. § 549(a).  Here, the Rood Appellants have failed to identify any property of the estate that has been transferred; in fact, they appear to complain that property from outside the estate, *i.e.*, Mr. Rood's money, was transferred to Debtor and/or to a Debtor Entity upon Debtor's behest.  As the Roods argued at the motions hearing, the complaint contains no allegation that any asset was transferred from Debtor or one of the Debtor Entities to the Roods after the bankruptcy petitions

34

were filed.  Thus, the Rood Appellants could not prevail on this claim, and it was properly dismissed.

### d.  Count XI – Request for Accounting

The eleventh count of the complaint seeks an order enforcing 11 U.S.C. § 542, titled "Turnover of property of the estate," which provides, in relevant part, that "an entity, other than a custodian, in possession, custody, or control, during the case, of property that the trustee may use, sell, or lease . . . shall deliver to the trustee, and account for, such property or the value of such property."  In moving to dismiss this count, the Roods argued that the complaint was "devoid of any allegation that Defendants Rood are in possession, custody, or control of such property."  (Rood Paper 5, Att. 2 at 23-24). While they acknowledged in their motion that the complaint alleged that Debtor paid $5,100 to an attorney on their behalf and that they were at one point in possession of a Cadillac he purportedly purchased for them, they claimed that it was undisputed that they were never in possession of the money and were no longer in possession of the Cadillac.[10]

At the motions hearing, the Rood Appellants argued, "we're seeking more than an accounting of the $5100 and something to do with the Cadillac. . . . We think that [], in this case, the

---

[10]  There appears to be no dispute that the Roods relinquished the Cadillac in December 2008.

transferor ought to account to the Trustee in terms of the source . . . and use of those funds." (Paper 9, Att. 2 at 37-38). They further explained, "While the Court has dismissed the conspiracy count, we still have our fervent belief that there was a conspiracy . . . and that with respect to the money trail we wish to follow . . . it starts with the transfer from the parents to the son of hundreds of thousands of dollars." (*Id.* at 38). In response, counsel for the Roods argued that the request "certainly is a proper scope of discovery, but . . . [t]here's no cause of action for money you give to somebody." (*Id.*). Thereafter, the court dismissed the count as to both defendants, apparently based upon its belief that "the accounting would come from the recipient," rather than the donor. (*Id.* at 37).

On appeal, the parties reiterate the arguments raised below, but point to no statutory or case law in support of their respective positions. Indeed, there appears to be little available guidance, in part, because the claim is typically viewed as a remedy rather than an independent cause of action. *See In re Del-Met Corp.*, 322 B.R. 781, 836 (M.D.Tenn. 2005). In *Bradshaw v. Thompson*, 454 F.2d 75, 79 (6th Cir. 1972), the court explained that "[a]n accounting is a species of disclosure, predicated upon the legal inability of a plaintiff to determine how much, if any, money is due him from another. It is an

36

extraordinary remedy, and like other equitable remedies, is available only when legal remedies are inadequate."

The court agrees that the requested accounting in this case would properly come from Debtor and/or the Debtor Entities, rather than the Roods. (Rood Paper 9, Att. 2 at 37). Moreover, the relief sought by the Rood Appellants would appear to be available *via* the discovery process within the adversary proceeding, rather than as a freestanding count in the complaint. Insofar as the count properly states a cause of action, the court is satisfied that it was properly dismissed.

### e.   Count XIII – Declaratory Judgment/Alter Ego

The final count of the complaint seeks to impute personal liability to all defendants by piercing the corporate veils of the corporate defendants. At the motions hearing, the sum total of the argument related to this count was as follows:

> [ROOD COUNSEL]: Your Honor, the final count of the complaint as it relates to my clients is count XIII, which is the declaratory judgment regarding alter ego.
>
> What the alter ego count is, as, as any alter ego, is that as a result of the manipulation or fraud in the use of an entity or entities for the personal benefit of an individual –
>
> THE COURT: I'm inclined to grant this motion.
>
> [ROOD COUNSEL]: Thank you, Your Honor.

THE COURT: [Counsel]?   I mean, I –
you're going to take other cases up on
appeal.  You may as well take this up with
you.

[ROSEN COUNSEL]:    Yes, Your Honor.

(Rood Paper 9, Att. 2 at 40).   Despite the fact that they
presented no argument on this issue in the court below, the Rood
Appellants nevertheless make a half-hearted attempt to contest
the ruling on appeal, arguing that "[t]he individual Defendants,
including the Rood Parents, should be declared the alter egos of
the corporate Defendants because the Debtor Entities are being
used as a mere shield for the perpetration of a fraud." (Rood
Paper 12, at 21).

The alter ego doctrine has typically been applied in
Maryland where a "corporate entity has been used as a subterfuge
and to observe it would work an injustice, the rationale being
that if the shareholders or the corporations themselves
disregard the proper formalities of a corporation, then the law
will do likewise as necessary to protect individual and
corporate creditors." *Hildreth v. Tidewater Equipment Co.,
Inc.*, 378 Md. 724, 735 (2003) (internal marks and citation
omitted).  While the complaint clearly states a basis for a
declaratory judgment that a number of the defendants used
various corporate entities as subterfuge, it says nothing with
regard to the Roods.  As to them, in fact, this count is

virtually indistinguishable from the conspiratorial theory of liability that has been found to be insufficiently pled. There are no allegations that the Roods are officers or employees of the corporate defendants, nor are there allegations of misdeeds committed by them within these entities. Accordingly, this count cannot be sustained as to them.

**B.   Motion for Leave to Amend**

**1.   Standard of Review**

The court reviews the bankruptcy court's denial of leave to amend for abuse of discretion. *See GE Inv. Private Placement Partners II v. Parker*, 247 F.3d 543, 548 (4th Cir. 2001).

**2.   Analysis**

The Rood Appellants' final contention is that the bankruptcy court erred by failing to grant leave to amend their complaint. In their papers opposing the Roods' motion to dismiss, they specifically asked that they be permitted to amend their complaint with respect to any dismissed claims, and they renewed this request during the motions hearing. Nevertheless, the bankruptcy court certified the dismissal as a final order pursuant to Bankruptcy Rule 7054, subject to immediate appellate review, expressly finding "no just reason for delay." (Rood Paper 9, Att. 2 at 30, 41; Paper 5, Att. 4). *See In re Wood & Locker, Inc.*, 25 F.3d 1045, *2 (5th Cir. 1994) (unpublished) (appeal from bankruptcy order disposing of some, but not all,

claims reviewable where bankruptcy court certifies its dismissal as a final order pursuant to Bankruptcy Rule 7054 and expressly finds "no just reason for delay") (quoting *Matter of Wood & Locker, Inc.*, 868 F.2d 139, 144 (5th Cir. 1989)); *see also In re Chateaugay Corp.*, 922 F.2d 86, 91 (2nd Cir. 1990) (applying Rule 54(b) to adversary proceedings by virtue of Bankruptcy Rule 7054, which incorporates Rule 54(b)); *In re Boca Arena, Inc.*, 184 F.3d 1285, 1287 (11th Cir. 1999) (same, collecting cases).

Federal Rule of Civil Procedure 15(a) applies to adversary proceedings in bankruptcy cases pursuant to Fed.R.Bankr.P. 7015. Pursuant to Rule 15(a), the plaintiff is permitted to amend his complaint once as a matter of course before the defendant files a responsive pleading.  Once a responsive pleading is filed, the plaintiff may amend only by leave of the court or by written consent of the defendant.  Fed.R.Civ.P. 15(a).  The same rule provides, however, that leave to amend "shall be freely given when justice so requires." *Id.*

As the Fourth Circuit explained in *Laber v. Harvey*, 438 F.3d 404, 426-27 (2006):

> We have interpreted Rule 15(a) to provide that "leave to amend a pleading should be denied only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would have been futile." *See Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 509 (4th Cir. 1986) (citing *Foman v. Davis*, 371 U.S. 178, 182,

83 S.Ct. 227, 9 L.Ed.2d 222 (1962)). Whether an amendment is prejudicial will often be determined by the nature of the amendment and its timing. A common example of a prejudicial amendment is one that "raises a new legal theory that would require the gathering and analysis of facts not already considered by the [defendant, and] is offered shortly before or during trial." *Id*. An amendment is not prejudicial, by contrast, if it merely adds an additional theory of recovery to the facts already pled and is offered before any discovery has occurred. *Davis v. Piper Aircraft Corp.*, 615 F.2d 606, 613 (4th Cir. 1980) ("Because defendant was from the outset made fully aware of the events giving rise to the action, an allowance of the amendment could not in any way prejudice the preparation of the defendant's case.").

Delay alone, however, is an insufficient reason to deny the plaintiff's motion to amend. *See Davis*, 615 F.2d at 613. For this reason, a district court may not deny such a motion simply because it has entered judgment against the plaintiff-be it a judgment of dismissal, a summary judgment, or a judgment after a trial on the merits. *See, e.g., Foman*, 371 U.S. at 182, 83 S.Ct. 227 (reversing district court's denial of motion to amend made after the district court entered judgment of dismissal); 6 Charles Allen Wright, Arthur R. Miller, & Mary Kay Kane, Federal Practice & Procedure § 1488 (2d ed. 1990) (collecting cases); *cf. Ostrzenski*, 177 F.3d at 252-53 (4th Cir.1999) (noting that district court should not dismiss a complaint with prejudice under Fed.R.Civ.P. 12(b)(6) without first giving the plaintiff leave to amend). Instead, a post-judgment motion to amend is evaluated under the same legal standard as a similar motion filed before judgment was entered-for prejudice, bad faith, or futility. *See Foman*, 371 U.S. at 182, 83 S.Ct. 227; *Johnson*, 785 F.2d at 509-510 (dicta). A

> moment's reflection reveals, however, that
> the further the case progressed before
> judgment was entered, the more likely it is
> that the amendment will prejudice the
> defendant or that a court will find bad
> faith on the plaintiff's part. *Adams v.*
> *Gould*, 739 F.2d 858, 864 (3d Cir.1984)
> ("[T]he factors that must guide our review
> may be affected by the fact that a summary
> judgment was granted before plaintiffs
> sought leave to amend their complaint.").

(footnote omitted).

Although the bankruptcy court did not articulate its reasons for not granting the motion for leave to appeal prior to certifying the matter for immediate appellate review – nor, it bears mention, did the Rood Appellants renew their request for leave to amend upon learning of this disposition – it was not required to do so. "As long as a . . . court's reasons for denying leave to amend are apparent, its failure to articulate those reasons does not amount to an abuse of discretion." *Edwards v. City of Goldsboro*, 178 F.3d 231, 242 (4th Cir. 1999) (citing *HealthSouth Rehab. Hosp. v. American Nat'l Red Cross*, 101 F.3d 1005, 1010 (4th Cir. 1996)). Considering the procedural posture of the Roods' motion to dismiss within the adversary proceeding, and indeed the posture of the adversary proceeding within the consolidated bankruptcy case, the bankruptcy court's rationale for declining to grant leave was clear, namely, because doing so would be futile.

By the time of the hearing on the Roods' motion to dismiss, the bankruptcy court had heard extensive testimony related to the alleged scheme during evidentiary hearings on the temporary restraining order, the preliminary injunction, and other motions within this adversary proceeding alone.  As noted, there were three other adversary proceedings relating to the same scheme. Thus, unlike most motions to dismiss, the court was intimately familiar with the facts of the case.  During the motions hearing, in fact, Judge Mannes specifically noted the difficulty he faced in limiting his review to the face of the complaint:

> [T]he difficulty with this motion is that it's . . . a motion to dismiss and . . . of course, I have to take everything in the complaint as well pleaded and true. . . . [I]t's very hard for me to deal with this because I've . . . heard, I think, a whole lot of the facts in this case that I'm going to hear and I – it's just that the barrier for a motion [to] dismiss is so much higher. Were this to come in some other fashion, such as a motion for summary judgment, or whatever, it would be a lot easier to tee it up.

(Rood Paper 9, Att. 2 at 5).

As counsel for Mr. Rosen acknowledged during the ensuing argument, the Roods' liability hinged on the success of the third count of the complaint, alleging that they were co-conspirators with Debtor such that his fraudulent acts could be imputed to them: "[T]he conspiracy count . . . is the count which we believe, for lack of a better term, provides the

linkage to the extent necessary to all of the other counts."
(*Id*. at 21).   As noted, the first count, alleging fraud by way
of a conspiracy, and the third, alleging conspiracy to commit
fraud, were indistinguishable.   In recognition of that fact, the
court heard argument on both counts prior to rendering his oral
decision:

> I will determine to dismiss Counts I
> and III of the complaint.   A civil
> conspiracy, as the Maryland Court of Appeals
> states in the case of [*Lloyd v. General
> Motors Corp*., 916 A.2d 297 (2007)], involves
> (1) a confederation of two or more persons
> by agreement or understanding; (2) some
> unlawful or tortious act done in furtherance
> of the conspiracy; or use of unlawful or
> tortious means to accomplish an act not in
> itself illegal; and (3) actual damage.
> I find that the complaint does not
> state this and insofar as this, these two
> counts are concerned, I will issue a final
> order.
> [Counsel], you may have bought yourself
> . . . an appeal on the very hardest type of
> case to uphold on appeal, the granting of a
> motion to dismiss the complaint, but you
> asked for it.
> So, I'll dismiss Counts I and III and I
> find no just reason for delay.

(*Id*. at 29-30).

While the complaint sets forth specific allegations of
fraudulent acts with regard to the fraudulent scheme, clearly
demonstrating the role of various players within the conspiracy,
the insufficiency of the allegations with respect to the Roods'
involvement is glaring.   Fraudulent conspiracies are notoriously

difficult to plead, particularly under the heightened standard of Fed.R.Civ.P. 9(b), but the Rood Appellants did a commendable job with respect to most of the defendants.  As to the Roods, however, the omission of any nexus between the Roods and the fraudulent scheme orchestrated by their son is apparent. Indeed, this should have been apparent to the Rood Appellants as well, particularly over the course of their involvement in related hearings; however, they never sought to amend their complaint in light of the testimony adduced at those hearings. Nor did they object when the bankruptcy court certified the order for an immediate appeal, file a motion for reconsideration, or at any point proffer facts that would fill in the considerable gaps in their complaint.  To permit them to attempt to do so now, on the verge of trial, would result in considerable delay and prejudice to the Roods.

In *Cozzarelli v. Inspire Pharms. Inc.*, 549 F.3d 618, 630-31 (4th Cir. 2008), the Fourth Circuit addressed a similar issue:

> Although the district court did not state its reasons for dismissing the complaint with prejudice, it is clear that amendment would be futile in light of the fundamental deficiencies in plaintiffs' theory of liability. *See* [*In re PEC Solutions, Inc. Sec. Litig.*, 418 F.3d 379, 391 (4th Cir. 2005)]. Furthermore, plaintiffs never filed a motion for leave to amend before the district court, nor did they present the district court with a proposed amended complaint.  Plaintiffs instead requested leave to amend only in a footnote of their

response to defendants' motion to dismiss, and again in the final sentence of their objections to the recommendation of the magistrate judge. Those requests did not qualify as motions for leave to amend, see Fed.R.Civ.P. 7(b), 15(a), and we cannot say that the district court abused its discretion by declining to grant a motion that was never properly made. *See, e.g., United States ex rel. Williams v. Martin-Baker Aircraft Co.*, 389 F.3d 1251, 1259 (D.C.Cir. 2004).

For the same reasons, this court cannot find that the bankruptcy court abused its discretion in declining to grant the Rood Appellants leave to amend their complaint.

## IV.  Conclusion

For the foregoing reasons, the Kore Appeal will be dismissed, and the decision of the bankruptcy court in the Rood Appeal will be affirmed.  Separate orders will follow.


_____/s/_____
DEBORAH K. CHASANOW
United States District Judge